Daniel ROSENBLOOM, Trustee of the Panex Industries, Inc. Stockholders' Liquidating Trust, and Norman Halper and Oliver Lazare, co-executors for the Estate of Paul Lazare, former Trustee of the Panex Industries, Inc. Stockholders' Liquidating Trust, Petitioners below-Appellants,

v.

ESSO VIRGIN ISLANDS, INC., Esso Standard Oil Co., Texaco, Inc., Texaco Caribbean Inc., Vernon Morgan, Trustee of Natural Resources of the U.S. Territory of the Virgin Islands, Government of the Virgin Islands, in its capacity as Department of Education and Department of Planning and Natural Resources, the State of New York and Western Auto Supply Co., Claimants below-Appellees,

and

Michael DeBaecke, as Trustee for the Successor Panex Industries, Inc. Stockholders' Liquidating Trust, Appellee.

No. 411, 1999.

Supreme Court of Delaware.

Argued: April 4, 2000.
Resubmitted on Supplemental
Briefing: Aug. 29, 2000.
Decided: Dec. 8, 2000.

Grover C. Brown, Esquire (argued), Gordon Fournaris & Mammarella, P.A., Wilmington, Delaware, and Joseph C. Schoell, Esquire, of Morris, James, Hitchens & Williams LLP, Wilmington, Delaware, for Petitioners below-Appellants Daniel Rosenbloom, Trustee of the Panex Industries, Inc. Stockholders' Liquidating Trust, and Norman Halper and Oliver Lazare, co-executors for the Estate of Paul Lazare, former Trustee of the Panex Industries, Inc. Stockholders' Liquidating Trust.

Arthur G. Connolly, Jr., Esquire, of Connolly, Bove, Lodge & Hutz, Wilmington, Delaware; and Robert T. Lehman, Esquire (argued), and Arthur H. Jones, Jr., Esquire, Archer & Greineer, P.C., Haddonfield, New Jersey, for Claimants below-Appellees Esso Virgin Islands, Inc., and Esso Standard Oil Co.

Bruce M. Stargatt, Esquire, and Martin S. Lessner, Esquire (argued), Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware, for Claimants below-Appellees

Texaco Inc., Texaco Caribbean Inc., and Vernon Morgan.

Bruce E. Jameson, Esquire, Prickett Jones & Elliott, Wilmington, Delaware, and John K. Dema, Esquire, Law Offices of John K. Dema, P.C., St. Croix, U.S. Virgin Islands, for Claimants below-Appellees Natural Resources Trustee of the Virgin Islands and the Government of the Virgin Islands in its Capacity as Department of Education and Department of Planning and Natural Resources.

Calvin L. Scott, Jr., Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, and Eliot Spitzer, Esquire, Attorney General of the State of New York, Michael S. Belohlavek, Esquire, Assistant Solicitor General, and Eugene Martin–Leff, Esquire, (argued) Assistant Attorney General, New York, New York, for Claimant below-Appellee State of New York.

Stephen E. Jenkins, Esquire, and Regina A. Iorii, Esquire, Ashby and Geddes, Wilmington, Delaware, and John R. Coon, Esquire, and Brita J. Forssberg, Esquire, Wright & Coon, Portland, Maine, attorneys for Claimant below-Appellee, Western Auto Supply Company.

R. Karl Hill, Esquire, (argued) Seitz, Van Ogtrop & Green, P.A., Wilmington, Delaware, for Appellee Successor Panex Industries, Inc. Stockholders' Liquidating Trust and Michael D. DeBaecke as Successor Trustee.

Before VEASEY, Chief Justice, WALSH, HOLLAND, BERGER, Justices, and DEL PESCO[1], Judge (constituting the Court en Banc).

DEL PESCO, Judge:

In this appeal from the Court of Chancery we address two issues. The first is whether the Court of Chancery acted within its authority in establishing a successor trust to succeed a liquidating trust which was about to expire on its own terms. The liquidating trust was established to administer the assets of a corporation dissolved in 1985 against which a variety of environmental claims—not asserted until after dissolution—remained pending against the corporation, predecessor corporations, the liquidating trust, and the beneficiaries of the liquidating trust.

The second question is whether it was an abuse of discretion to replace on the grounds of conflict of interest, the trustees of the liquidating trust upon creation of a successor trust when the trustees, who had received a substantial portion of the $64 million pre-dissolution distribution as well as a substantial portion of a subsequent $4.2 million post-dissolution distribution, had petitioned for instructions requesting termination of the trust which, if granted, would have denied a remedy to claimants, and avoided a possible recoupment action for the proceeds distributed.

As to both issues, we agree with the rulings of the Court of Chancery and, accordingly, affirm.

I

This factually complex dispute began in the Court of Chancery with the filing of a Petition for Instructions in June 1994. The Petition was filed by the Trustees of the Panex Trust, a liquidating trust created by Panex, Inc. (also referred to as the "Liquidating Trust") as part of its 1984 liquidation plan implemented prior to its 1985 dissolution. Appellants are Daniel Rosenbloom, as former Trustee of the Panex Trust, and Norman Halper and Oliver Lazare, executors of the Estate of Paul Lazare, as successors to Paul Lazare, a former Trustee of the Panex Trust (hereafter "Rosenbloom" and "Lazare", respectively, or the "Trustees"). The appeal is from the September 30, 1997, Order of the Court of Chancery, as amended October 10, 1997 (the "Order"), seeking to have it reversed and set aside.

1. Sitting by designation pursuant to Supreme Court Rule 2 and Del. Const. art. IV § 12.

The Claimants below, Appellees are Esso Virgin Islands, Inc. and Esso Standard Oil Co. (collectively "Esso"), Texaco Inc., Texaco Caribbean Inc. and Vernon Morgan (collectively "Texaco"), and Western Auto Supply Co. (Western Auto), the Natural Resources Trustees for the United States Territory of the Virgin Islands, the Government of the Virgin Islands, in its capacity as Department of Education and Department of Planning and Natural Resources and the State of New York.

The Duplan Corporation ("Duplan") was created under Delaware law in 1917. Its shares were publicly traded. In 1970, Duplan acquired Laga Industries, Ltd. ("Laga"), a Virgin Islands corporation that operated a textile manufacturing facility in Tutu, St. Thomas (the "Laga facility"). After the acquisition, the former owners of Laga, Andreas Gal ("Gal") and Paul Lazare ("Lazare"), became officers of Duplan.

In 1976, Duplan petitioned for protection and reorganization under the Bankruptcy Act in the United States District Court for the Southern District of New York. As part of that proceeding, Laga's operations in the Virgin Islands were terminated in late 1978. In December, 1979, the Laga facility was sold at a public, court-ordered auction to a New York partnership consisting of Gal and Lazare. Laga Industries, Ltd. was dissolved in 1981 for failure to pay corporate franchise taxes.

In 1981 Duplan emerged from bankruptcy, reorganized and was renamed Panex Industries, Inc. ("Panex"). Panex's principal shareholders were the family interests of Lazare and Gal (37% of the common stock); a former trustee of the Panex Trust, Rosenbloom and his partnerships (40%) ("the Rosenbloom group"); and Goldman Sachs (13%).[2] The only business operations of Panex remaining at the time of its emergence from bankruptcy were a wholly-owned subsidiary, Wundies, Inc, a manufacturer of children's apparel, and Rochester Button Company (then the larg-est button manufacturer in the United States), a division of Panex located in Wellsville, New York.

In 1984, Panex sold the Rochester Button division. Later that same year, the Panex stockholders approved a Plan of Liquidation (the "liquidation plan") for the corporation under § 337 of the Internal Revenue Code. That liquidation plan expressly called for the establishment of the Panex Trust within the following twelve months. A certificate of dissolution of Panex was filed, as contemplated by the liquidation plan, on April 15, 1985.

In July 1985, pursuant to the liquidation plan, Wundies, Inc, the wholly owned subsidiary and last remaining operating asset of Panex, was sold. Liquidating distributions, aggregating approximately $64 million, were made to Panex's stockholders in September and December of 1984 and September of 1985. The Panex Trust was established the same month. Also pursuant to the liquidation plan, Gal and Rosenbloom, both of whom had been officers and directors of Panex, were designated Trustees. Gal resigned shortly thereafter, and was succeeded by Lazare. Each share of common stock in Panex was converted into a nontransferable "unit" of the Panex Trust. Thus, the stockholders of Panex (then over 300 in number) were the express beneficiaries of the Panex Trust.

The Panex Trust stated its purpose:

This Trust is established for the sole purpose of holding the Assets transferred to it by Panex on behalf of the Beneficiaries, enforcing the rights of the Beneficiaries thereto, collecting the income thereon, satisfying any and all liabilities of Panex which are not paid or otherwise discharged, distributing the Trust Property to the Beneficiaries, and taking such other action as is necessary to conserve and protect the Trust Property and to provide for the orderly liquidation of any and all of the Assets.[3]

---

2. Answering Brief of Appellees Esso Virgin Island, Inc. and Esso Standard Oil Co. at 5–6.

3. Trust Agreement ¶ 3.1

The duration of the Panex Trust was set at three years, subject to extension but not to exceed 12 years from the date of its creation. The Trust was created "for the limited purpose of discharging any ... liabilities of the Trust of Panex which the Trustees have reasonable grounds to believe may be asserted."[4] Panex had no known or suspected liabilities at the time it created the Trust except potential liabilities for additional taxes.

By July 1987, the statute of limitations had run on Panex's 1982 and 1983 tax years. Since its possible tax liabilities were then reduced, and since there were then no other known or suspected Panex liabilities, the Panex Trust distributed $3 per unit, approximately $4.8 million, to its beneficiaries, the former Panex stockholders.

In April 1988, just before the statute of limitations on the 1984 tax year would have expired (thus relieving the Panex Trust of the last possible liability), the Trustees received a notice from the State of New York of a claim against Panex for damages allegedly arising from environmental contamination at a waste site near Wellsville, New York once used by the Rochester Button Company. Once aware of this potential liability, the Trustees postponed any further distributions and extended the life of the Panex Trust beyond its three-year term. No further distributions have been made.

The Proxy Statement for Panex's Liquidation Plan informed stockholders:

It is possible that the entire amount which will be held in the Liquidating Trust to cover contingent and other liabilities of Panex will be used to discharge such liabilities ... Moreover, although the Board of Directors believes that the amount of approximately $6 million which will be deposited in the Liquidating Trust will be sufficient to cover any liabilities which may arise during or after the Liquidation Period, there can be no assurance that this will be the case. **If the amount held in the Liquidating Trust is insufficient to discharge fully all liabilities which arise, or if liabilities arise after the Liquidating Trust is terminated, each Panex stockholder may be liable for any unpaid portion of such liabilities to the extent of the liquidating distributions paid to him....**[5]

Each year from 1985 through 1991, the audited financial statements prepared by the Panex Trust's independent auditors reminded the former shareholders of the Proxy Settlement's earlier condition that "[i]f the amount held in the Trust is insufficient to discharge fully all liabilities which may arise, or if such liabilities arise after the Trust is terminated, each beneficiary may be liable for any unpaid portion of such liabilities to the extent of liquidating distributions paid to such beneficiary by the Company and the Trust."

In 1987, the Environmental Protection Agency ("EPA") found that several wells in the east-central portion of St. Thomas ("the Tutu site") were polluted. Esso and Texaco had service stations in the area, and were called upon by the EPA to enter into an Administrative Order of Consent that required them to undertake an investigation of the Tutu site. Esso and Texaco have expended over $4 million in responding to the EPA's remedial orders, including the funding of the remedial investigations. It is expected that the total remediation will cost in excess of $15 million.

In 1989, the Tutu Wells action was commenced by property owners in the area of the contamination,[6] but neither Panex, the Panex Trust, Duplan, Laga, Gal nor Lazare was named as a defendant, and none received notice of the lawsuit. It was not

---

4. Trust Agreement ¶ 8.1.

5. Appendix to Appellants' Opening Brief at A–183 (emphasis added).

6. *In Re Tutu Wells Contamination Litigation,* D.V.I., 846 F.Supp. 1243, 1249 (1993).

until March, 1992, that direct actions against Laga, Duplan, Panex, Lazare and Gal ("the Laga defendants") were commenced. When the Laga defendants became defendants in the Tutu Wells action, the Claimants here,[7] also defendants in Tutu Wells, commenced the third party complaints which form the basis for the Tutu Wells portion of the claims at issue here. The third-party actions asserted claims for contribution and indemnity under the common law and for contribution and response costs under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601–9615 ("CERCLA") and the Resource Conservation and Recovery Act, 42 U.S.C. § 6991 *et seq.* ("RCRA"). In accordance with the Trust Agreement, ¶ 4.1, the Trustees defended the Tutu Wells action. They also asserted claims for coverage against various insurers of Panex and Duplan.[8] A summary judgment decision in favor of Employers Insurance of Wausau on the pollution exclusion was entered last year. That decision has not yet been reviewed on appeal.[9]

During the winter of 1993–94, the Trustees of the Panex Trust attempted to settle the common law claims in Tutu Wells. Meanwhile the State of New York, in May, 1994, commenced *State v. Panex*[10] in the United States District Court for the Western District of New York, thereby formally asserting another claim against the Panex Trust.

In June 1994, the Trustees of the Panex Trust filed the Petition for Instructions in the Court of Chancery. They sought the "entry of an order approving the payment of a settlement of certain claims against the [Panex] Trust and instructions with respect to the Trustee's obligations to other claimants...."

Meanwhile the Judge in Tutu Wells enjoined the Laga defendants (the Panex Trust had not yet been added as a defendant) from proceeding with their Chancery Court petition or from disbursing any Trust assets.[11] In order to consummate the settlement, Gal and Lazare paid $2 million of their own funds to the Tutu Wells plaintiffs.[12] That decision was appealed and reversed on the ground that Panex, Duplan and Laga were dissolved and lacked the capacity to be sued. Likewise, no action could lie against Gal and Lazare in their capacities as former directors of the dissolved corporations. The Court suggested that under *City Investing Liquidating Trust v. Continental Cas. Co.,*[13] the Panex Trust was a separate legal entity that was subject to suit "so long as it exists" as it was "obligated to discharge all liabilities of the predecessor corporation as provided in the trust agreement."[14]

Ultimately, the Panex Trust, Gal, Lazare, the Rosenbloom group and Goldman Sachs were added as third party defendants in the Virgin Islands litigation. The claim against them is based on a trust fund theory. No further injunctive relief was granted.

In March 1996, the Trustees filed their First Amended and Supplemental Petition for Instructions in the Court of Chancery. They requested the Vice Chancellor to:

> enter an order directing allowing and determining (1) that the Trustees may

---

**7.** With the exception of the State of New York.

**8.** *Employers Ins. of Wausau v. Duplan Corp.,* S.D.N.Y., 899 F.Supp. 1112, 1114–1116 and 1124–1127; 1129 (1995).

**9.** *Employers Ins. of Wausau v. The Duplan Corporation, et al.,* 1999 WL 777976, Haight, J. (S.D.N.Y. Sept. 30, 1999)(Mem. Op. and Order).

**10.** *State of New York v. Panex Industries, Inc.,* W.D.N.Y., 860 F.Supp. 977 (1994).

**11.** *In Re Tutu Wells Contamination Litigation,* D.V.I., 885 F.Supp. 776 (1995), rev'd 3rd. Cir., 74 F.3d 1228 (1995).

**12.** *Tutu Wells,* 885 F.Supp. at 791–92.

**13.** Del.Supr., 624 A.2d 1191 (1993).

**14.** *Id.*

pay $343,917.85 to reimburse Gal and Lazare as reimbursement for their payment towards [a settlement] or, in the alternative, providing such instructions with respect to the payment of the [settlement] as the Court shall determine to be proper; (2) that the Trustees may pay all other liquidated claims against the [Panex] Trust, in order of priority, first $250,000 to [Arthur D. Little], second $2,000,000 to Messrs. Gal and Lazare from the remaining liquid assets of the [Panex] Trust and from sums which may be collected from the insurers' (3) that the Trustees may pay any contingent claims proved herein from the remaining liquid assets of the [Panex] Trust or from the insurance proceeds which may be collected by the [Panex] Trust; (4) that the Trustees may assign any contingent assets of the [Panex] Trust, i.e. unpaid insurance claims, to the remaining creditors of the [Panex] Trust; (5) that the [Panex] Trust shall be terminated and the Trustees discharged upon compliance with the provisions of the order of this Court; (6) that the recipients of distributions from the [Panex] Trust or from Panex are not liable to the [Panex] Trust or others for repayment or reimbursement of those distributions; (7) that the acts of [Panex] and Trustees in making distributions and the anticipated payments hereunder are and were proper in all respects; and (8) that the [Panex] Trust and Trustees shall have such other relief as the Court deems just and equitable.

The Claimants responded to the Petition, filed notices of claims against the Panex Trust and opposed its termination.

The Claimants sought a mechanism to protect their ability to obtain and satisfy a judgment, if obtained against the Panex Trust in the Virgin Islands and New York litigation, and to preserve trust fund claims against the former Panex shareholders, should the assets of the Trust prove insufficient to satisfy the judgments.

The Claimants initially sought to stay the proceedings in the Court of Chancery. The matter was argued in September 1996. The request for a stay was denied, and the Vice Chancellor instructed the parties to attempt to negotiate a plan of termination of the Trust. In mid–1997, after the Trustees and the claimants unsuccessfully attempted to negotiate the Trust's termination, the parties returned to the Vice Chancellor. A hearing was conducted in August 1997. The Vice Chancellor issued a bench ruling followed by an order dated October 10, 1997, which established a Successor Trust which would be the legal successor to Panex and the Panex Trust, thus allowing the Panex Trust to terminate under its own terms. The order also appointed an independent trustee, Michael DeBaecke, Esquire, to defend the Successor Trust in the Virgin Islands and New York litigation and to evaluate whether to pursue claims for recoupment of the funds received by the former shareholders.

The October 10, 1997, Order has repeated references to the fact that the Petitioners are pursuing claims.[15] Also included in the Order is a provision that draws much attention from the Appellants:

5. *Powers and Limitation of Liability of Successor Panex Trustee.*

a. The Successor Panex Trustee shall have, . . . the following powers with respect to the Successor Panex Trust

---

15. For example:
WHEREAS, the Petitioning Claimants have claims pending against the Panex Trust and former Panex shareholders in the Environmental Litigations in federal court in the Virgin islands and New York;

 \* \* \* \* \* \*

WHEREAS, the Panex Trust should continue to litigate, defend against, and/or settle

claims brought against it by Petitioning Claimants in the Environmental Litigations;

which shall be exercised in a fiduciary capacity, **in the best interests of Claimants**, and·in fulfillment of the purposes of the Successor Panex Trust: (emphasis supplied: enumeration of powers omitted).

The Order of the Vice Chancellor was appealed and dismissed as interlocutory.

On October 23, 1998, Michael DeBaecke, (the "Successor Trustee"), filed a "Petition for Declaratory Judgment" seeking an order from the Court of Chancery: (a) declaring that monies previously distributed conditionally to the beneficiaries of the Panex Trust be returned to the successor trust or; (b) in the alternative, an order finding the former Trustees liable for breaches of their fiduciary duties for failing to obtain an express undertaking from the distributees that the monies would be returned to the Panex Trust, if necessary.

Thereafter, the Court of Chancery entered an Order on August 11, 1999, vacating its earlier Order and re-entering it so that the ·decision to appoint a Successor Trustee could be reviewed pursuant to Court of Chancery Rule 54(b).

## II

■ Appellants contend that the Court of Chancery erred in recognizing a duty toward claimants with unliquidated claims and in terminating the Panex Trust.

■ Our scope of review with regard to the Claimants' standing implicates rulings of law that we review *de novo*.[16] Extending a liquidating trust by the vehicle of a successor trust is subject to review under 16 standard. It is analogous to the continuation of a corporation after ·dissolution, and the extension of such period is a decision which the Court of Chancery "shall in its discretion direct."[17]

■ The former Trustees' argue that the Claimants are not creditors to whom the Trustees owe a duty. The notion that only creditors have rights against a dissolved corporation is incorrect. "In order to formalize the continued existence of corporate assets and to provide a mechanism for the assertion of claims as part of the "winding up" process, the Delaware General Corporation Law continues the corporation's existence by operation of law".[18] Section 278 provides an "automatic extension of corporate existence for three years." When that period of time is insufficient, the statute also permits a "further period of implicit corporate existence, of indefinite duration ... [to facilitate] ... the statutory directive that no action for or against the corporation shall abate by reason of the dissolution of the corporation, the corporation's existence being extended until the execution of all judgments or decrees affecting the corporation" *Id.*

■ In their petition for instructions, the Appellants sought the termination of the Panex Trust. Alternatively, they argued that they preferred the continuation of the Panex Trust to the creation of a successor. The Court of Chancery clearly had the authority to extend the term of the trust in order to complete its purpose of "discharging any ... liabilities of the Trust of Panex which the Trustees have reasonable grounds to believe may be asserted."[19,20] But the Court of Chancery was not limited to that option.

**16.** *City of Wilmington v. Parcel of Land*, Del. Supr., 607 A.2d 1163, 1165–66 (1992); *Gilbert v. El Paso Co.*, Del.Supr., 575 A.2d 1131, 1141 (1990).

**17.** 8 *Del. C.* § 278.

**18.** *City Investing*, 624 A.2d at 1194, referencing 8 *Del. C.* § 278.

**19.** Trust Agreement ¶ 8.1.

**20.** *See Gans v. MDR*, Del. Ch., 1995 WL 214352, C.A. No. 9630–NC, Steele, V.C. (March 28, 1995)(court authorizes termination of liquidating trust and establishment of a Successor Trust for the benefit of the creditor plaintiffs); *In re Heizer Corp.*, Del. Ch., 1993 WL 156124, C.A. No. 7949, Berger, V.C. (April 26, 1993)(court approves trustee's plan to continue liquidating trust for the sole purpose of retaining assets until such time as assets could be sold at a fair price).

*City Investing* recognizes that § 278 is not the exclusive method for the enforcement of claims for or against a dissolved corporation. In *City Investing*, the alternate method was a liquidating trust. The Court of Chancery took a further step and concluded that since the liquidating trust, the Panex Trust, was about to expire, rather than extending the trust, the better method for preserving the rights of claimants was the creation of a successor trust to complete the winding up process. The successor trust specifically enumerates the claimants whose claims may be considered, thus closing the door on other claimants. With that benefit, and without in any way compromising the obligation of the successor trustee to defend the claims, there is no prejudice to the Appellants. We find no error in creating the successor trust.

### III

■ The Appellants object to the removal of the Panex Trustees. The removal of trustees is within the sound discretion of the Court of Chancery.[21] This Court may reverse a discretionary decision of the Court of Chancery only upon a finding of abuse of discretion.[22]

■ The law is settled that the Court may order the removal and replacement of trustees based on a conflict of interest.[23] Such authority is to be used only "sparingly".[24]

■ The essence of the argument advanced is that no conflict between the Trustees of the Panex Trust and the claimants existed because the claimants "could not have required the Trustees to take the extraordinary action of suing former stockholder beneficiaries to recover funds dis-

tributed years ago in good faith." Appellees further argue that the claimants are already attempting to recover from those same former stockholder beneficiaries in other pending litigations.[25]

By deciding to create a successor trust, the Vice Chancellor necessarily had concluded that the claims then pending must survive the termination of the Panex Trust. With that decision, there arose the specter of a recoupment action against the Panex stockholders since the successor trust would have little money with which to fulfill his responsibilities or pay claims, if required. The Panex Trustees were the recipients of a great portion of the $64 million which was distributed before the creation of the Panex Trust, and they were on notice that:

> **If the amount held in the Liquidating Trust is insufficient to discharge fully all liabilities which arise, or if liabilities arise after the Liquidating Trust is terminated, each Panex stockholder may be liable for any unpaid portion of such liabilities to the extent of the liquidating distributions paid to him....**

Furthermore, there had been years of contentious litigation where the Panex Trust had taken the position that it had no duty to respond to the Claimant's claims for contribution or indemnification. Given that circumstance, and the substance of the Petition and Amended Petition for instructions which sought to terminate the Panex Trust and limit the liability of the Panex Trustees and other Panex stockholders, the Trustees' conflict of interest was palpable. Contrary to the Appellants' argument, the Vice Chancellor specifically and carefully refrained from deciding

**21.** *Gans v. MDR Liquidating Corp.*, Del. Ch., 1991 WL 114514, C.A. No. 9630–NC, Hartnett, V.C. (June 25, 1991), (Mem.Op.) at 6.

**22.** *Yiannatsis v. Stephanis*, Del.Supr., 653 A.2d 275, 281 (1995).

**23.** *In re Catell's Estate*, Del. Ch., 38 A.2d 466, 469–470 (1944).

**24.** *Smith v. Biggs Boiler Works Co.*, Del. Ch., 91 A.2d 193, 199 (1952).

**25.** *In re Panex Industries, Inc. Stockholders' Liquidating Trust*, Del. Ch., 1999 WL 669350, C.A. No. 13584–NC, Dkt. No. 118.

whether or not a recoupment or restitution action would be necessary or appropriate, leaving that for further analysis by the Successor Trustee. The fact that the Successor Trustee has initiated such an action does not mean that his effort is immune from review. Appellants also argue that it was error for the Vice Chancellor to do indirectly what could not be accomplished directly, the appointment of a trustee who is less likely to be antagonistic toward the unproven, contingent claims of the Appellees. There is no record to support the contention that the Successor Trustee lacks vigor in his defense of the claims asserted by the Appellants, and the record to date suggests the contrary.

The Court of Chancery did not abuse its discretion, under the totality of the circumstances, in removing trustees with a great personal financial interest in the termination of the Panex Trust, and an apparent willingness to terminate the Trust, thereby denying the Claimants an entity to pursue if successful in proving their claim and further denying them a possible vehicle for funding an award, if achieved. The difficulty in defending the contribution and indemnification claims asserted is apparent when one recognizes that CERCLA is a strict liability statute [26] which, because enacted subsequent to Duplan's discharge in bankruptcy, is available to the Claimants as a cause of action and which, because of

---

26. *Tippins, Inc. v. USX Corp.*, 3rd Cir., 37 F.3d 87, 92 (1994).

27. The predecessor of Panex, Duplan, sought Bankruptcy protection in 1976. In 1983, pursuant to a plan of reorganization, a Final Decree was entered which provided, *inter alia* a general discharge of Duplan's debts and liabilities and a permanent injunction against any debtors from commencing any suit against Duplan or Panex. Certain beneficiaries of the Panex Trust filed a motion to enforce the Final Decree and permanent injunction. In 1997, the Bankruptcy Court denied the motion on the grounds that the final decree discharged only claims that arose prior to the filing of the petition for relief. CERCLA claims arose subsequent to that time, at the earliest on the date that CERCLA

---

the nature of environmental claims, creates a very large financial exposure.[27]

## IV

The final argument of the appellants is that the Court of Chancery erred when it entered an Order that undermined the rights of the beneficiaries of the Panex Trust and altered the duties and obligations of the trustees prescribed by the settlor. "It has been recognized in Delaware, as elsewhere, that the testator's intent governs a determination as to what powers are transferred to a Successor Trustee."[28] They point to ¶ 14 of the Order which provides:

14. *Authorization to Pursue Specific Claims.* Without limiting the discretion of the Successor Panex Trustee to best marshal the assets of the Successor Panex Trust, the Successor Panex Trustee is hereby authorized to:

\*　　\*　　\*　　\*　　\*　　\*

b. to evaluate, investigate, and if desirable, pursue, litigate, and/or settle claims on behalf of the Successor Panex Trust for recoupment of distributions made by Panex, Inc. to its shareholders prior to creation of the Panex Trust. . . .

Appellants also object to the ¶¶ 5a and 6 of the Order:

5. *Powers and Limitation of Liability of Successor Panex Trustee.*

became effective, December 11, 1980. The Bankruptcy Court did not address specifically the RCRA and common law claims against the beneficiaries. The Bankruptcy Court's decision was affirmed on appeal to the District Court. The Second Circuit affirmed the holding as to the CERCLA claims, determined that a RCRA claims was unavailable due to the factual allegations in the complaint below, and remanded for the development of a complete factual record on the common law claims of strict liability and equitable disgorgement. *Duplan Corp. v. Esso Virgin Island, Inc.*, 2d Cir., 212 F.3d 144 (2000).

28. *See Jacobs v. Wilmington Trust Company*, 9 Del.Ch. 400, 80 A. 346 (1911), (affirming 9 Del. Ch. 77, 77 A. 78 (1910)).

a. The Successor Panex Trustee shall have, in addition to those powers specified elsewhere herein, the powers granted pursuant to the Panex Industries, Inc. Stockholders Liquidating Trust Agreement dated September 12, 1985, and the general powers of the office, the following powers with respect to the Successor Panex Trust which shall be exercised in a fiduciary capacity in the best interests of *Claimants,* and in fulfillment of the purposes of the Successor Panex Trust: [powers to manage money, pay expenses, preserve principal, manage funds, and related matters] (emphasis supplied)

\* \* \* \* \* \*

6. *Compensation of the Successor Panex Trustee.* The Successor Panex Trustee shall be entitled to reasonable compensation.... Claimants may, but have no obligation to, advance payments for compensation directly to the Successor Panex Trustee ... [and] shall be entitled to priority repayment of such funds....

\* \* \* \* \* \*

12. *Successor Panex Trust Funds.* ... shall include all the assets of the Panex Trust, including the following:

\* \* \* \* \* \*

c. All monies recovered in any action(s) which may be brought by the Successor Panex Trustee for recoupment o distributions made by Panex, Inc. to its shareholders prior to creation of the Panex Trust and for recoupment of distributions made by the Panex Trust to the former stockholders of the then dissolved Panex, Inc.

The Appellants ask this Court to consider the inequity to the former Panex stockholders where the Trustee, with no liquid assets, has an incentive to turn against the Panex stockholders, as he has done by filing a petition seeking a return of some distributed funds.

 The Appellant's assertions are simply incorrect. The successor trust did not modify the rights of the beneficiaries. Neither the Panex Trust nor the successor trust was created to serve solely the interests of the Panex stockholders. Panex Trust was a liquidating trust. "The establishment of a liquidation trust is entirely consistent with the orderly winding up process contemplated by Section 278 provided it does not serve as a basis for the avoidance of corporate liabilities".[29] The *Claimants* in the successor trust are, by definition, both the Trustees of the Panex Trust and the Claimants in this action, collectively referred to in the Order as Claimants.[30]

Appellants argue that Panex is free from liability, and as such the claims against former stockholders are without merit. They support their argument with references to two federal court decisions, Judge

---

**29.** *City Investing Liquidating Trust v. Continental Cas. Co.,* Del.Supr., 624 A.2d 1191, 1196 (1993).

**30.** 9. WHEREAS, the following entities have filed with this court timely, valid and sufficient notices of claims against the Panex Trust: Esso Virgin Islands, Inc. and Esso Standard Oil Co. (P.R.) (collectively "Esso"), Texaco Inc., Texaco Caribbean Inc. and Vernon Morgan (collectively "Texaco"), the State of New York, Western Auto Supply Company ("Western Auto") and the Natural Resources Trustees of the U.S. Territory of the Virgin Islands, and the Government of the Virgin Islands in its capacity as Department of Education and Department of Planning and Natural Resources ("Virgin Islands")(together the "Petitioning Claimants"). Amendment to Order Dated September 30, 1997.

\* \* \* \* \* \*

WHEREAS, in addition to the Petitioning Claimants, the Trustees of the Panex Trust have requested permission to make payments to former Trustees Andreas Gal ("Gal") and current trustee Paul Lazare ("Lazare") for specific advances of funds made on behalf of the Panex Trust by Gal and Lazare (Petitioning Claimants, Gal and Lazare are hereafter collectively referred to as "Claimants").

Stapleton's in the Third Circuit considering Tutu Wells [31] and Judge Elfvin's in the Western District of New York.[32] They contend that the cases stand for the proposition that Claimants have no cause of action against the former Panex stockholders to recover distributions made to them to pay claims because the requirements of 8 Del.C. § 325 cannot be met; judgment cannot be secured against a Panex, a dissolved corporation. Claimants counter that Esso's trust fund action in the Virgin Islands is premised on the theory that the former shareholders are holding Panex assets that are owed to Esso as a creditor of that corporation.

■ This appeal is based on the entry of a final judgment pursuant to Court of Chancery Rule 54(b). The Court of Chancery entered final judgments on three issues: termination of the Panex Trust, creation of the successor trust and the appointment of the Successor Trustee. Those final judgments define the scope of this review.[33] The argument on the merits of the underlying claims is not properly before this Court.

The judgment of the Court of Chancery is AFFIRMED.

**31.** *In re Tutu Wells Contamination Litigation,* No. 95–7270, slip op. at 14–15, 74 F.3d 1228, Stapleton, J. (3d Cir. Dec. 21, 1995).

**32.** *State of New York v. Panex Industries, Inc.,* No. 94–CU–400E(H), slip op. at 7, 1997 WL 805419, Elfvin, J. (W.D.N.Y. Dec. 30, 1997).

**33.** *In re Panex Industries, Inc. Stockholders' Liquidating Trust,* (Del.Ch.), 1999 WL 669350 at *2, Steele, V.C., (Aug. 11, 1999) (No. C.A. 13584–NC).