05-0514-cv, 05-0702-cv, 05-0706-cv, 05-0708-cv
Marsh, et al. v. New York, et al.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2005

(Argued: February 6, 2006   Decided: August 28, 2007)

05-0514-cv (Lead),-0702-cv (XAP),-0706-cv (XAP),-0708-cv (XAP)

-----------------------------------------

Langdon Marsh, as Acting Commissioner of the New York
State Department of Environmental Conservation and
Trustee of the Natural Resources and Michael D. Zagata,
as Commissioner of the New York State Department of
Environmental Conservation,

Plaintiffs,

State of New York and Denise M. Sheehan, as Acting
Commissioner of the New York State Department of
Environmental Conservation and Trustee of the Natural
Resources,

Plaintiffs-Appellants-Cross-Appellees,

- v. -

Daniel Rosenbloom, Firmanco Associates, First Manhattan
Company, as distributees of the assets of Panex
Industries, Inc., Andreas Gal, Norman Halper and Oliver
Lazare, in their capacities as co-executors of the
Estate of Paul Lazare and Goldman Sachs & Company, as
distributees of the assets of Panex Industries, Inc.,

Defendants-Cross-Defendants-Appellees-
Cross-Appellants,

Panex Industries, Inc., Panex Industries, Inc.
Liquidating Trust, Alpine Group, Inc., and Rochester
Button Company, Inc.,

Defendant-Cross-Defendant,

Dresser Industries Inc.,

                     Intervenor-Plaintiff-Movant,

Turbodyne Electric Power Corporation, McGraw-Edison
Company, Inc., Dresser-Rand Company, ABB Air Preheater,
Inc., and Village of Wellsville,

     Defendants-Cross-Claimants-Cross-Defendants,

Successor Panex Industries, Inc. Stockholders
Liquidating Trust, Michael D. Debaecke, Esq., as
Trustee of Successor Panex Industries, Inc.
Stockholders Liquidating Trust,

                     Defendants,

Cooper Industries, Inc.,

          Intervenor-Third Party-Defendant.


          -------------------------------------------

B e f o r e:   JACOBS, POOLER, and JOHN R. GIBSON,* Circuit
               Judges.


     Appeal from a judgment of the United States District Court

for the Western District of New York (Elfvin, J., District Judge)

following orders dismissing the State of New York's claims

against the dissolved corporation Panex's shareholder-

distributees and denying the Panex trustees' motion to dismiss

the State's CERCLA claims against Panex.  We affirm the dismissal

of the State's claims against the shareholder-distributees and

reverse the judgment granted to the State on its CERCLA claims

against Panex.

_____

     * The Honorable John R. Gibson, Circuit Judge, United States
Court of Appeals for the Eighth Circuit, sitting by designation.

                              2

RICHARD P. DEARING, Assistant Solicitor General of the State of New York, and EUGENE J. LEFF, Assistant Attorney General of the State of New York, <u>for Plaintiff-Appellant-Cross-Appellee State of New York and Alexander Grannis[**]</u>.

GITA F. ROTHSCHILD, law firm of McCarter & English, LLP, and MARK F. ROSENBERG, law firm of Sullivan & Cromwell LLP, <u>for Defendants-Cross-Defendants-Appellees, Cross-Appellants Daniel Rosenbloom, Firmanco Associates, and First Manhattan Company</u>.

ROBERT L. TOFEL and MARK A. LOPEMAN, Tofel & Partners, LLP, <u>for Defendants-Cross-Defendants-Appellees, Cross-Appellants Andreas Gal, Estate of Paul Lazare, Norman Halper, Oliver Lazare</u>.

BRIAN M. COGAN, Stroock & Stroock & Lavan LLP, <u>for Defendant-Appellee-Cross-Appellant Goldman Sachs & Company</u>.

JOHN R. GIBSON, Circuit Judge.

The State of New York appeals from orders of the United States District Court for the Western District of New York (Elfvin, J., <u>District Judge</u>) dismissing its claims against shareholder-distributees of Panex Industries, Inc., a dissolved Delaware corporation. The State asserted these claims several years after Panex had been dissolved, outside the corporate wind-up period established by Delaware General Corporation Law § 278

---

[**]Alexander Grannis succeeded Erin M. Crotty to the office of Commissioner of the New York State Department of Environmental Conservation and is named here pursuant to Federal Rule of Appellate Procedure 43(c)(2).

and before obtaining a judgment against Panex as required by Delaware General Corporation Law § 325(b), but the State argues that its claims are valid under the common law equitable trust fund doctrine. The shareholder-distributees cross-appeal from the district court's denial of a motion to dismiss the State's CERCLA claims against Panex and the summary judgment granted to the State on those claims. They argue that Delaware General Corporation Law § 278 governs and that Panex lacked capacity to be sued under the statute because it had been dissolved for over three years by the time the State notified Panex of its claims and filed suit. The district court found that CERCLA preempted section 278 in this instance.

## I.

The issues raised in this appeal are one chapter in a complex tale involving numerous parties. At the heart of the suit is the State's effort to recover $4.5 million in unreimbursed environmental response costs that it has paid to investigate and clean up the Wellsville-Andover Landfill site in Allegany County, New York.[1]

Panex Industries, Inc., was formed in 1981 under Delaware law as part of the reorganization plan of its predecessor company, Duplan Corporation. One of Duplan's operating divisions

---

[1]In all the State paid or raised costs of $10 million in connection with cleanup of the site, and the remaining sum is what is left after the State's settlements with other parties.

had been the Rochester Button Company, a manufacturing plant.  In the early 1970s, Rochester Button used the Wellsville-Andover Landfill site to dispose of its industrial waste, placing much of it in a special disposal pit designated for Rochester Button's exclusive use.  There was abundant evidence that Rochester Button made substantial deposits of hazardous waste at the landfill during the course of its operations.  The New York State Department of Environmental Conservation ultimately determined that the site presented a significant threat to the public health and environment, and the State began incurring response costs in connection with its investigation of contamination at the site in April 1984.

Meanwhile, unaware of the contamination at the landfill site or of the State's recently commenced investigation, Panex's shareholders voted to dissolve the corporation on September 24, 1984.  Panex filed its Certification of Dissolution effecting its formal dissolution under Delaware law on April 15, 1985.  To facilitate the corporate wind-up, Panex's liquidation plan created a Stockholder's Liquidating Trust, which was intended in part to reduce tax liability arising after dissolution, see City Investing Co. Liquidating Trust v. Continental Casualty Co., 624 A.2d 1191, 1196 (Del. 1993).  Panex's former shareholders had received liquidating distributions totaling $64 million before the Trust was created.  The Trust received $6 million in funding

5

at its inception, and it distributed about $4.5 million to former shareholders in July 1987 when the statute of limitations had run on its 1982 and 1983 tax years and there were no other known Panex liabilities. In all, the shareholder-distributees received over $68 million in distributions. The defendant-appellees in this action were among those distributees.

Delaware General Corporation Law § 278 generally establishes a three-year continuation period, beginning at dissolution, for dissolved corporations to wind up their affairs and for unknown claimants to assert claims against the corporation. After this period, the corporation ceases to exist and lacks capacity to be sued. The State sent Panex formal notice of its claim for response costs at the landfill site in March 1988, but Panex did not receive the notice until April 25, 1988--just over three years after its dissolution (which occurred on April 15, 1985), thus just after the wind-up period expired. Upon receipt of this notice, the trustees of the Panex Trust extended the life of the Trust and postponed further distributions. For the next several years, the State conducted investigations at the site and, in 1994, formulated a remediation plan.

After adopting the remediation plan, the State filed this action in the Western District of New York against Panex, the Panex Trust, and the purchasers of the Rochester Button assets, among others, asserting federal claims under CERCLA and nuisance

6

claims under New York law.  On behalf of Panex, its trustees moved to dismiss, arguing that Delaware General Corporation Law § 278 barred all claims against Panex because the suit was filed more than three years after its dissolution.  The district court dismissed the state-law nuisance claims but denied the motion to dismiss the CERCLA claims, holding that CERCLA preempted Delaware's statutory limit on the dissolved corporation's capacity to be sued.

In March 1997, the costs of defending this and another CERCLA lawsuit[2] had depleted the Panex Trust further, and the district court granted the State leave to join Panex's shareholder-distributees as defendants in this action.  The State asserts claims under the common law equitable trust fund doctrine, which allows claimants against a dissolved or insolvent corporation to follow the distributed assets of the corporation into the hands of its shareholders in order to satisfy the corporation's liability.  See, e.g., Koch v. United States, 138 F.2d 850, 852 (10th Cir. 1943).

---

[2]Panex and the shareholder-distributees were involved in similar environmental litigation in the Virgin Islands, and the Third Circuit concluded that Panex lacked capacity to be sued under Delaware General Corporation Law § 278 and that Delaware General Corporation Law § 325(b) barred suit against the former shareholders.  In re Tutu Wells Contamination Litig., No. 95-7280, slip op. at 9 (3d Cir. Dec. 21, 1995) (noted in table at 74 F.3d 1228).  The shareholder-distributees have argued that the State participated in that litigation and is bound by the outcome in that case, but we need not reach that argument to resolve the instant appeal and cross-appeal.

Panex's shareholder-distributees moved to dismiss the claims against them under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The district court granted the motion on October 2, 1997, ruling that the trust fund doctrine did not survive Delaware's enactment of section 278, which barred the State's claims because they were not brought within three years of Panex's dissolution. The district court also concluded that the State's claim against the shareholder-distributees was premature on the ground that Delaware General Corporation Law § 325(b) required the State to obtain a judgment against Panex and the Panex Trust, and have that judgment returned unsatisfied, before pursuing recovery from the shareholder-distributees, which the State had not done. The court rejected the State's argument that it should adopt the trust fund doctrine as a matter of federal common law under CERCLA, which would in turn preempt the Delaware statutes. As a result of this ruling, the shareholder-distributees were dismissed as defendants.

Seven years later, the district court granted summary judgment to the State on its CERCLA claims against Panex and the successor trust that had succeeded the Panex Trust, concluding that CERCLA preempts the Delaware statutory limits that otherwise would bar suit against the dissolved corporation. The district court's judgment held Panex and the successor trust jointly and severally liable to the State for $4,558,034.83 under CERCLA §

107, 42 U.S.C. § 9607, and declared that those entities were jointly and severally liable for all future response costs incurred by the State in cleaning up the site under CERCLA §§ 113(g)(2). Neither Panex nor the successor trust has any assets to pay the judgment, so, if the State is going to recover from anyone, it must be the shareholder-distributees. Thus, the State appeals the district court's 1997 order dismissing its claims against the shareholder-distributees. The shareholder-distributees cross-appeal the 2004 grant of summary judgment against Panex and the denial of an earlier motion to dismiss the claims against Panex in light of the State's failure to file suit within the three-year wind-up period established by Delaware General Corporation Law § 278.

The State advances four arguments in its appeal:

1. The district court erred in determining that section 278 bars the State's claim against the shareholder-distributees, because the common law trust fund doctrine survives enactment of the statute;

2. The district court erred in holding that the State's claims against the shareholder-distributees were premature under section 325(b) because it had not first obtained an unsatisfied judgment against Panex;

3. The district court correctly held that CERCLA preempts any time limits that Delaware General Corporation Law § 278 would

place on the State's claims against Panex, and the court should have allowed its claims against the shareholder-distributees to proceed on the same grounds; and

4. The district court erred in refusing to recognize that the trust fund doctrine applies in any timely-filed CERCLA suit as a matter of federal common law.

On cross-appeal, the shareholder-distributees argue that the district court erred in finding that CERCLA preempts Delaware law's limitation on the dissolved corporation Panex's capacity to be sued after the expiration of the wind-up period.

## II.

The State argues that the district court erred in holding that Delaware General Corporation Law §§ 278 and 325(b) bar its claims against the Panex shareholder-distributees. According to the State, the trust fund doctrine permits claims against dissolved corporations to go forward with no special time limit, and sections 278 and 325(b) have no effect upon its continued relevance. We review the district court's decision to grant the motion to dismiss de novo. See Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998).

## A. Section 278

We first address the State's argument that the trust fund doctrine survives enactment of Delaware General Corporation Law, Del. Code Ann. tit. 8, § 278, allowing its claims against Panex

10

and the shareholder-distributees to proceed even though suit was filed more than three years after Panex's dissolution. Under the common law, dissolution of a corporation terminated its existence as a legal entity, thus abating all pending actions by and against it and terminating its capacity to sue or be sued. In re Citadel Indus., Inc., 423 A.2d 500, 503 (Del. Ch. 1980). The trust fund doctrine first arose, in part, to compensate for this rather harsh rule, giving creditors some protection in the event of a corporate dissolution. In re RegO Co., 623 A.2d 92, 95 (Del. Ch. 1992). Essentially, the trust fund doctrine gave creditors an equitable right to follow corporate assets after dissolution, such that the assets are held like a trust in which the creditors have a claim superior to that of the shareholders. Id.; see also Koch v. United States, 138 F.2d 850, 852 (10th Cir. 1943); Snyder v. Nathan, 353 F.2d 3, 4 (7th Cir. 1965).

Several states have enacted statutes that continue the existence of corporations for a definite period of time following dissolution, thereby providing a statutory remedy for the difficulties associated with the common law abatement rule. Considering that the equitable remedy arose in order to supply relief where none existed, it may be argued that adequate statutory remedies deprive courts of equitable jurisdiction. See George I. Wallach, Products Liability:  A Remedy in Search of a Defendant-The Effect of a Sale of Assets and Subsequent

11

Dissolution on Product Dissatisfaction Claims, 41 Mo. L. Rev. 321, 332 (1976). Indeed, several courts construing such statutes have concluded that the statutory remedies available to creditors obviate reliance upon equitable remedies, thereby precluding their use by the courts. See, e.g., Reconstruction Fin. Corp. v. Teter, 117 F.2d 716, 727 (7th Cir. 1941) (holding that Illinois statutes "completely regulate and control both the substantive and procedural rights" of a corporation's creditors); Hunter v. Fort Worth Capital Corp., 620 S.W.2d 547, 550 (Tex. 1981)("The effect of these statutes was to supplant the equitable trust fund theory by declaring a statutory equivalent."). But see Green v. Oilwell, Div. of U.S. Steel Corp., 767 P.2d 1348, 1352 (Okla. 1989) (holding that state law did not provide a direct remedy for creditors and therefore did not displace the trust fund doctrine). The Delaware Court of Chancery has addressed this issue briefly, explaining that "the problem that the trust fund doctrine addresses has been ameliorated by provisions in the corporate codes of most or all jurisdictions that continue the existence of the corporation as a jural entity for limited purposes following dissolution." In re RegO Co., 623 A.2d at 95.

Delaware's post-dissolution statute, section 278 of the Delaware General Corporation Law[3], was enacted in order "to

---

[3]Del. Code Ann. tit. 8, § 278 provides:

All corporations, whether they expire by their own

12

formalize the continued existence of corporate assets and to provide a mechanism for the assertion of claims as part of the 'winding up' process . . . [continuing] the corporation's existence by operation of law." City Investing Co. Liquidating Trust v. Continental Casualty Co., 624 A.2d 1191, 1194 (Del. 1993). Like other post-dissolution statutes, section 278 provides that "any suit against the corporation, which was filed before dissolution or during the three year statutory wind-up period, does not abate, even on the expiration of the wind-up period." In re RegO Co., 623 A.2d at 95. When the wind-up period expires, however, so does the corporation's capacity to be

---

limitation or are otherwise dissolved, shall nevertheless be continued, for the term of 3 years from such expiration or dissolution or for such longer period as the Court of Chancery shall in its discretion direct, bodies corporate for the purpose of prosecuting and defending suits, whether civil, criminal or administrative, by or against them, and of enabling them gradually to settle and close their business, to dispose of and convey their property, to discharge their liabilities and to distribute to their stockholders any remaining assets, but not for the purpose of continuing the business for which the corporation was organized. With respect to any action, suit or proceeding begun by or against the corporation either prior to or within 3 years after the date of its expiration or dissolution, the action shall not abate by reason of the dissolution of the corporation; the corporation shall, solely for the purpose of such action, suit or proceeding, be continued as a body corporate beyond the 3-year period and until any judgments, orders or decrees therein shall be fully executed, without the necessity for any special direction to that effect by the Court of Chancery.

sued.

The initial question before this court is whether section 278 supersedes the trust fund doctrine, preventing the State's claims against Panex's shareholder-distributees from going forward because the State filed suit after the expiration of the three-year wind-up period. The State argues that because section 278 does not explicitly address the remedies available to creditors against shareholder-distributees, section 278 does not supersede the trust fund doctrine as to these defendants. The district court noted, however, that the trust fund doctrine has never been used by a Delaware law court to circumvent section 278 in any situation. Other courts also have recognized that the trust fund doctrine has been superseded by wind-up statutes, and the district court cited three cases to support this proposition: Pacific Scene, Inc. v. Penasquitos Inc., 758 P.2d 1182 (Cal. 1985); Hunter, 620 S.W.2d 547; and Blankenship v. Demmler Manufacturing Co., 411 N.E.2d 1153 (Ill. App. Ct. 1980).

The State argues that the district court's reliance upon these cases is misplaced because they involve statutes that provide specific statutory remedies against shareholder-distributees, unlike section 278, thereby limiting their applicability. Thus, California Corporations Code § 2009 "restored to creditors a direct remedy against the former shareholders of dissolved corporations," Pacific Scene, 758 P.2d

14

at 1184; in Texas, Article 7.12 of the Texas Business Corporation Act "applies to officers, directors, and shareholders of a dissolved corporation," Hunter, 620 S.W.2d at 550; and in Illinois, the two-year survival statute provided that corporate dissolution "shall not take away or impair any remedy available to or against such corporation, its directors, or shareholders" for claims accruing before dissolution as long as suit was filed within the two year period, Blankenship, 411 N.E.2d at 1156.

These cases support the conclusion that section 278 applies to this case. First, in concluding that statutory remedies supersede the common law trust fund doctrine, all three cases address as a policy matter the necessity of protecting shareholders, together with officers and corporations, from uncertain liability; this reduces the significance of differences in statutory language. See, e.g., Pacific Scene, 758 P.2d at 1187 (stating that "shareholders nonetheless possess an important statutory interest in the final and certain termination of their involvement with the affairs of a dissolving corporation"); Hunter, 620 S.W.2d at 551 (stating that "Article 7.12 expresses a legislative policy to restrict the use of the trust fund theory to pre-dissolution claims, and to protect shareholders, officers and directors of a dissolved corporation from prolonged and uncertain liability"). We recognize that shareholders, officers, and corporations all have an interest in certainty and finality.

15

See 15A William M. Fletcher, Cyclopedia of the Law of Corporations § 7373 (2006)("The trust fund doctrine is fuzzy; statutes by contrast are sharp.  Accordingly, the adoption of corporate dissolution statutes has supplanted the equitable trust theory in most jurisdictions.").

Second, all three cases deal with post-dissolution claims, so the courts were addressing the availability of the trust fund doctrine despite statutory schemes that limit remedies to pre-dissolution claims.  The cases question whether to apply the trust fund doctrine in order to provide extra-statutory remedies, which explains the emphasis on statutory construction and whether the statutes regulate corporate liability to the point of superceding the trust fund doctrine.  See, e.g., Hunter, 620 S.W.2d at 551 (stating that "no real purpose would be served by . . . permitting suits against officers, directors, and shareholders of a dissolved corporation, unless the legislature intended for the statute to bar resort to the trust fund theory apart from the statute in order to enforce post-dissolution claims.  To hold otherwise would violate the rule of statutory construction that the legislature is never presumed to do a useless act"); Pacific Scene, 758 P.2d at 1186 ("Courts and commenters . . . have been troubled by [the] implication that legislators uselessly created a redundant statutory remedy for a subclass of claims concurrently remediable in equity.").

16

In contrast, the instant case involves a claim accruing before Panex's dissolution. Therefore the key question is not whether section 278 completely supersedes the trust fund doctrine, but is instead the narrower question of whether section 278 provides a remedy for the State's pre-dissolution claim against Panex's former shareholders.[4] Contrary to the State's assertions, several Delaware cases suggest that the Court of Chancery interprets section 278 as applying to claims against both corporations and shareholders that arise before dissolution. The court in In re RegO Co. briefly discussed the relationship between the trust fund doctrine and statutory remedies. It acknowledged that section 278 addresses the same problems as the trust fund doctrine, but it also recognized that the "modern scheme still leaves open the question, what, if any, rights are afforded to persons who have no claim against a corporation at the time of its dissolution, or during the statutory wind-up period, but who do thereafter acquire such a claim." In re RegO Co., 623 A.2d at 96. The court concluded that a corporation could not be liable for a post-dissolution claim, but

---

[4]Even if section 278 does not encompass such a remedy, the differences in statutory language between section 278 and other state statutes are not necessarily dispositive. As the decisions cited by the district court indicate, the important issue is whether the State of Delaware would have enacted section 278 while preserving a subclass of claims, those against shareholders, remediable in equity. We believe it would not.

17

characterized the possibility that shareholders and directors may be liable as "an unclear and troubling question."  Id.

The crucial question for the court in analyzing statutory remedies was whether a claim arose before or after the statutory wind-up period, not whether the defendant was the corporation, the directors, or the shareholders.[5]  By addressing the fact that shareholders and directors may be liable in the modern scheme, but only in the context of post-dissolution claims, the court was implicitly recognizing that section 278 covers all potential pre-dissolution claims, regardless of which corporate constituent is named as the defendant.

Similarly, in In re Citadel Industries, Inc. the court made no distinction between potential defendants when it analyzed the

---

[5]The distinction between pre-dissolution and post-dissolution claims articulated in In Re RegO Co. also allows us to address another of the State's arguments.  Section 282(b) of the Delaware General Corporation Law provides that if a corporation chooses to distribute its assets in accordance with procedures described in section 281(a), then its shareholders "shall not be liable for any claim against the corporation on which an action, suit or proceeding is not begun prior to the expiration of the period described in § 278 of this title."  The State argues that this demonstrates the continued vitality of the trust fund doctrine in Delaware law.  As the Court of Chancery explained, however, sections 280-282 were passed in order to address the uncertainty associated with dissolving a corporation that faces potential future claimants.  See In re RegO Co., 623 A.2d at 96.  In other words, sections 280-282 do not recognize the continued vitality of the trust fund doctrine, but rather foreclose the use of the trust fund doctrine for post-dissolution claims, provided dissolved corporations follow the procedures outlined in section 281(a).  This is of no consequence for determining whether section 278 has an effect on the trust fund doctrine's applicability in pre-dissolution claims.

expiration of the three-year statutory wind-up period.  The court

concluded that the corporation "no longer existed as a body

corporate.  It no longer had legal existence as a corporation. .

. . [T]here was no longer a legal entity which could be continued

through its officers, directors and shareholders."  In re Citadel

Industries, Inc., 423 A.2d at 507.  The court also expressed

concern that "[o]nce a corporation is dissolved, the following

three-year period run, all known debts paid, [and] all remaining

assets distributed to shareholders, . . . [h]ow can a vast number

of former shareholders be compelled to return any final

distribution of assets, etc.?"  Id. at 506.  Although section 278

does not set forth specific remedies against shareholders, there

is evidence that the Court of Chancery considers section 278 to

be a comprehensive statutory remedy available to creditors for

claims against all potential defendants, including the

corporation, its officers, and its shareholders.[6]

---

[6]The Court of Chancery's decisions in City Investing Co.
Liquidating Trust 624 A.2d 1191, and Rosenbloom v. Esso Virgin
Islands, Inc., 766 A.2d 451 (Del. 2000), are of no avail to the
State in this case.  Neither case makes any reference to the
availability of the trust fund doctrine for pursuing claims
against dissolved corporations and their former shareholders.
City Investing Co. Liquidating Trust held that "a liquidating
trust is the successor of the corporation whose assets it
administers" and thus subject to creditors' claims despite the
corporation's dissolution.  624 A.2d at 1197.  Similarly, in
Rosenbloom, the Court of Chancery recognized that the creation of
a successor trust was necessary to preserve the claimants' rights
and "complete the winding up process."  766 A.2d at 459.  Instead
of making any reference to the trust fund doctrine, both cases
delineate the role of trusts in Delaware's statutory framework.

19

We are persuaded by the general consensus that modern statutory remedies have effectively replaced the trust fund doctrine and that there are sound reasons for abiding by the wind-up period established by section 278. We therefore conclude that the district court correctly held that the State's claims against the shareholder-distributees are barred by section 278.

### B. Section 325(b)

Having concluded that section 278 applies to the State's claims against Panex and its former shareholders, we must likewise conclude that Delaware General Corporation Law § 325(b)[7] bars the State's claims against the shareholder-distributees. As the State points out, Delaware law requires that for section 325(b) to apply, the defendants must be liable "by the provisions of this chapter." Del. Code Ann. tit. § 325(a). The State argues that this precludes application of section 325(b) in this case because it is a suit arising in equity.

In light of our conclusion that section 278 provides the only basis for liability, the State's argument must fail.

---

Indeed, the State has an unchallenged judgment against Panex's liquidating trust; the difficulty is that its assets are insufficient to satisfy the claim.

[7]Del. Code Ann. tit. 8, § 325(b) provides:

No suit shall be brought against any officer, director or stockholder for any debt of a corporation of which such person is an officer, director or stockholder, until judgment be obtained therefor against the corporation and execution thereon returned unsatisfied.

20

Section 278 applies to claims against shareholders that arise before dissolution, so therefore section 325(b) also applies and the State must obtain judgment against Panex before pursuing its claim against the shareholder-distributees.

### III.

As we have concluded that the Delaware statutes bar the State's claims against Panex and its shareholder-distributees, we turn to the State's argument that those statutes should not apply in the face of CERCLA. The district court accepted this argument as to Panex, holding that CERCLA preempted Delaware General Corporation Law § 278's three-year limitation on Panex's capacity to be sued. It rejected the argument as to the shareholder-distributees, however, reasoning that Delaware law controls because any liability of the shareholder-distributees would arise from their amenability to suit under Delaware law, not from CERCLA or federal common law. We hold that CERCLA does not require displacement of Delaware law in this case, and the suits against both the shareholder-distributees and Panex are barred.

The State first contends that Delaware law conflicts with the federal policy expressed in CERCLA, such that the six-year CERCLA limitations period set forth at 42 U.S.C. § 9613(g)(2)(B) preempts the three-year corporate wind-up period established by Delaware General Corporation Law § 278. Alternatively, the State urges this Court to displace the Delaware statutes and apply the

21

trust fund doctrine as a matter of federal common law in CERCLA cases, allowing it to pursue Panex assets that have been distributed to Panex's former shareholders.

We begin with the observation that corporate law is overwhelmingly the province of the states.  See Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 98-99 (1991).  The Federal Rules of Civil Procedure provide that state law governs a corporation's capacity to be sued, Fed. R. Civ. P. 17(b), and the Supreme Court has held that "[h]ow long and upon what terms a state-created corporation may continue to exist is a matter exclusively of state power," with the federal government "powerless to resurrect a corporation which the state has put out of existence for all purposes."  Chicago Title & Trust Co. v. Forty-One Thirty-Six Wilcox Bldg. Corp., 302 U.S. 120, 127-28 (1937); see also Melrose Distillers, Inc. v. United States, 359 U.S. 271, 272 (1959) (state law determines the question of corporate existence). Whether framed in terms of conflict preemption or in terms of the creation of federal common law, the Supreme Court expressly has cautioned against displacement of state law in areas traditionally occupied by the states.  See, e.g., English v. Gen. Elec. Co., 496 U.S. 72, 79 (1990) (warning that preemption of "areas that have been traditionally occupied by the States" is inappropriate absent "clear and manifest" congressional intent to supersede state law); Atherton v. FDIC, 519 U.S. 213, 218 (1997)

22

(stating that Congress legislates against the background of state law, so a "significant conflict" between federal policy and state law must be specifically shown before the creation of federal common law is justified).  Keeping these principles in mind, we address in turn each of the State's arguments for displacement of Delaware corporate law.

## A. Conflict Preemption

To determine whether CERCLA preempts the Delaware statutes, we must ascertain the intent of Congress.  Cal. Fed. Sav. & Loan Ass'n v. Guerra, 479 U.S. 272, 280 (1987).  The Supreme Court has identified three situations that show congressional intent to preempt state law: (1) where Congress expressly states its intent to preempt; (2) where Congress's scheme of federal regulation is sufficiently comprehensive to give rise to a reasonable inference that it leaves no room for the state to act; and (3) where state law actually conflicts with federal law.  Id. at 280-81.  CERCLA does not expressly state an intent to preempt state law across the board.  See Bedford Affiliates v. Sills, 156 F.3d 416, 426 (2d Cir. 1998).  While CERCLA does state that it applies "[n]otwithstanding any other provision or rule of law," 42 U.S.C. § 9607(a), this clause refers only to substantive liability and does not express congressional intent to preempt state rules on how litigation proceeds, including a party's amenability to suit. See Citizens Elec. Corp. v. Bituminous Fire & Marine Ins. Co., 68

23

F.3d 1016, 1019 (7th Cir. 1995). Nor is the CERCLA regulatory scheme so comprehensive that we reasonably can infer an intent to preempt; in fact, state corporate law can supplement CERCLA in several situations. Bedford Affiliates, 156 F.3d at 426-27.

Our inquiry therefore focuses on the third preemption scenario, whether Delaware law actually conflicts with CERCLA. An actual conflict between state and federal law exists when "compliance with both federal and state regulations is a physical impossibility," Guerra, 479 U.S. at 281 (quoting Fla. Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-43 (1963)), or when state law is "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," Guerra, 479 U.S. at 281 (quoting Hines v. Davidowitz, 312 U.S. 52, 67 (1941)). Absent clear congressional intent to the contrary, federal preemption of state law is not favored, see English, 496 U.S. at 79, especially in areas of law traditionally occupied by the states. As we observed above, corporate law is one of these areas. Kamen, 500 U.S. at 99. For preemption to occur in this instance, then, the conflict between state law and federal policy must be a "sharp" one. See Boyle v. United Tech. Corp., 487 U.S. 500, 507 (1988).

The "physical impossibility" form of conflict does not exist here, because it is certainly possible to comply with the CERCLA limitations period and Delaware's limits on the amenability to

24

suit of dissolved corporations and their shareholder-distributees.  As long as a CERCLA plaintiff files its claim within three years of the corporation's dissolution as required by Delaware General Corporation Law § 278, or seeks extension of the wind-up period from the Court of Chancery within that time as section 278 allows, it also meets CERCLA's six-year limitations period, 42 U.S.C. § 9613(g)(2).  See Witco Corp. v. Beekhuis, 38 F.3d 682, 688 (3d Cir. 1994) (finding no actual conflict where it was physically possible for CERCLA claimant to file within three-year CERCLA limitations period and eight-month period established by Delaware nonclaim statute, which also contained a mechanism to preserve contingent CERCLA contribution claims).  That a CERCLA plaintiff, like the State here, might find it impossible to comply with both statutes in some circumstances is not enough to establish an actual conflict between the two in this case.  See id. at 688.  The question of preemption thus turns on whether Delaware law presents an obstacle to the accomplishment of CERCLA's objectives.

CERCLA manifests Congress's intent that hazardous waste sites should be cleaned up and that those responsible for the contamination should bear the costs.  Pennsylvania v. Union Gas Co., 491 U.S. 1, 7 (1989).  To effectuate these goals, CERCLA looks backward in time and imposes wide-ranging liability.  It allows the government to recover remediation costs directly from

25

parties responsible for contamination, 42 U.S.C. § 9607(a)(4)(A); it allows private parties to seek indemnification and contribution for clean-up costs from potentially responsible parties, 42 U.S.C. § 9607(a)(4)(B); and it imposes strict liability on owners and operators of contamination sites, 42 U.S.C. § 9607(a)(1). See B.F. Goodrich Co. v. Murtha, 958 F.2d 1192, 1198 (2d Cir. 1992). Even so, CERCLA's statutory scheme anticipates that, in some situations, it will be impossible to recover from responsible parties. See Commander Oil Corp. v. Barlo Equip. Corp., 215 F.3d 321, 327 (2d Cir. 2000) ("neither does CERCLA automatically assign liability to every party with any connection to a contaminated facility"). In other words, CERCLA's cost-recovery objective, while strong, is not absolute and may yield to countervailing considerations. As the Supreme Court has stated, "there is no federal policy that the fund should always win," and "'more money' arguments" alone are insufficient to justify displacement of state law. O'Melveny & Myers v. FDIC, 512 U.S. 79, 88 (1994) (discussing federal common law in the context of the Financial Institutions Reform, Recovery, and Enforcement Act).

We cannot conclude that Delaware law is an obstacle to the accomplishment of CERCLA's objectives in this instance. The State's strongest argument on this point is that CERCLA aims to hold corporations financially responsible for the environmental

26

damage their activities cause, and dismissal of its claims under Delaware law will require taxpayers to pay for the Rochester Button cleanup, even though millions of dollars in Panex assets are traceable to the shareholder-distributees.  CERCLA recognizes, however, that recovery will not always be possible and manifests no intent that funds that once belonged to a party responsible for contamination should be frozen indefinitely or traced infinitely.  See Onan Corp. v. Indus. Steel Corp., 770 F. Supp. 490, 494 (D. Minn. 1989) (recognizing need to construe CERCLA broadly to achieve environmental and cost-assignment goals but stating that CERCLA's reach is "not unlimited"), aff'd, 909 F.2d 511 (8th Cir. 1990).  That Delaware law, in affording dissolved corporations and their shareholders a measure of finality, operates to leave the State with no source of recovery in this case amounts to the type of "more money" argument the Supreme Court rejected in O'Melveny, 512 U.S. at 88.  It is not the sort of sharp conflict between state law and federal policy that justifies preemption.

The district court documented the disagreement among federal courts on this issue.[8]  Many of the cases that hold that CERCLA

_____

[8]Several district courts, like the court below, have held that CERCLA preempts state limits on the capacity of dissolved corporations to be sued in light of congressional intent that CERCLA impose broad-ranging liability.  See, e.g., United States v. Sharon Steel Corp., 681 F. Supp. 1492, 1495-96 (D. Utah 1987); BASF Corp. v. Cent. Transp., Inc., 830 F. Supp. 1011, 1013 (E.D. Mich. 1993) (collecting cases); Idylwoods Assocs. v. Mader

preempts state limits predate Supreme Court precedent strongly admonishing courts against displacing state law lightly, see, e.g., O'Melveny, 512 U.S. at 88. In light of that precedent and CERCLA's limits we join those Courts of Appeals that have held that CERCLA does not preempt state statutes that limit a party's capacity to be sued. See Levin Metals Corp. v. Parr-Richmond Terminal Co., 817 F.2d 1448, 1451 (9th Cir. 1987); Onan Corp. v. Indus. Steel Corp., 770 F. Supp. 490, 494 (D. Minn. 1989), aff'd, 909 F.2d 511 (8th Cir. 1990); Witco Corp. v. Beekhuis, 38 F.3d 682, 690 (3d Cir. 1994).

A conflict could exist if the Delaware statutes would thwart CERCLA's goals by encouraging corporations responsible for contamination to dissolve and distribute assets to avoid CERCLA liability, but this simply is not the case. States have incentives not to enact laws that would inspire such a "race to the bottom." Anspec Co. v. Johnson Controls, Inc., 922 F.2d 1240, 1250 (6th Cir. 1991) (Kennedy, J., concurring) ("States have a substantial interest in protecting their citizens and state resources."). Delaware law protects against this result, requiring dissolving corporations to provide security that will be "reasonably likely to be sufficient" to cover claims that have not been made known to the corporation or that, based on facts

Capital, 915 F. Supp. 1290, 1303-04 (W.D.N.Y. 1996) (collecting cases).

28

known to the corporation, are likely to arise within a period after dissolution. Del. Code Ann. tit. 8, §§ 280(c)(3), 281(b). See also Bradford C. Mank, Should State Corporate Law Define Successor Liability?: The Demise of CERCLA's Federal Common Law, 68 U. Cin. L. Rev. 1157, 1160 (2000) (corporate successor liability laws of most states "generally prevent corporations from using sham transactions to escape CERCLA liability"). In addition, section 278 provides for extension of the wind-up period beyond three years "as the Court of Chancery shall in its discretion direct," which could give a potential CERCLA plaintiff time to investigate the contamination site while preserving its ability to make a claim against the dissolving corporation. Finally, we are not persuaded by the district court's rationale that it is "unlikely that Congress intended that CERCLA treat differently and inconsistently corporations in identical positions based upon the state of their incorporation"; preemption is not favored absent clear congressional intent to the contrary, see English, 496 U.S. at 79, and Congress's probable desire for uniformity is not enough to justify displacement of state law where that state law does not actually conflict with the "clear and manifest purpose of Congress," Witco, 38 F.3d at 687. See also New York v. Nat'l Serv. Indus., Inc., 460 F.3d 201, 208 (2d Cir. 2006).

On a fundamental level, the CERCLA statute of limitations

and Delaware's corporate wind-up period serve different purposes, reinforcing our conclusion that they do not actually conflict. CERCLA's statute of limitations "extinguishes the right to prosecute an accrued cause of action after a period of time." Burlington N. & Santa Fe Ry. Co. v. Poole Chem. Co., 419 F.3d 355, 362-63 (5th Cir. 2005). In contrast, Delaware's section 278 defines a dissolved corporation's capacity to be sued, creating a right for dissolved corporations and their former shareholders to be free from suit after a period of time. See id. As the State points out, an important goal of CERCLA's statute of limitations is to allow time for parties to gauge response costs before the suit is filed, H.R. Rep. No. 99-253, pt. 3, at 20 (1985), reprinted in 1986 U.S.C.C.A.N. 3038, 3043; thus, the applicable CERCLA statute of limitations in this case did not begin to run until "6 years after initiation of physical on-site construction of the remedial action." 41 U.S.C. § 9613(g)(2)(B). The Delaware statute limiting capacity to be sued does not necessarily interfere with this goal, however, because it provides for potentially indefinite extension of the three-year wind-up period in the discretion of the Court of Chancery. Del. Code Ann. tit. 8, § 278. Delaware's statute limits capacity to be sued, not liability, and thus does not conflict with CERCLA's statute of limitations--even if in operation the state law precludes the CERCLA plaintiff from recovering in some

30

circumstances. See Witco, 38 F.3d at 690; Louisiana-Pac. Corp. v. ASARCO, Inc., 5 F.3d 431, 433-34 (9th Cir. 1993); Onan, 770 F. Supp. at 494-95; Levin Metals Corp. v. Parr-Richmond Terminal Co., 817 F.2d 1448, 1451 (9th Cir. 1987).

The State analogizes this case to Bedford Affiliates, where we held that CERCLA preempted state-law claims for restitution and indemnification. 156 F.3d at 427. In that case, however, the plaintiffs' state-law claims for restitution and indemnification stood in the way of CERCLA's objective of encouraging settlement, which it achieves by restricting the availability of contribution actions. The restitution and indemnification claims would have given the plaintiffs an alternative to the contribution action withheld by CERCLA, which flies in the face of the federal goal of encouraging settlements. CERCLA's statute of limitations and Delaware's corporate wind-up period present no such direct conflict.

In sum, the State has not shown such a conflict between Delaware law and the congressional policy manifested in CERCLA as to lead us to conclude that Congress intended to preempt Delaware's corporate wind-up period, which protects dissolved corporations' and their former shareholders' interests in finality. CERCLA does not suggest that "the entire corpus of state corporation law is to be replaced simply because a plaintiff's cause of action is based upon a federal statute,"

31

Burks v. Lasker, 441 U.S. 471, 478 (1979), or because it would net the government more money, O'Melveny, 512 U.S. at 88, which is essentially all the State has shown here. That is not sufficient to justify preemption.

## B. Federal Common Law

Having held that the CERCLA statute of limitations does not preempt Delaware law in this instance, we address the State's argument that we should create a rule of federal common law based on the equitable trust fund doctrine for CERCLA cases. The State's proposed rule would displace Delaware law and allow the State to pursue the assets Panex distributed to its former shareholders.

The Supreme Court has sharply curtailed the federal courts' ability to create rules of federal common law. To justify creation of a rule of federal common law, the State must show specifically a "significant conflict between some federal policy or interest and the use of state law." Wallis v. Pan Am. Petroleum Corp., 384 U.S. 63, 68 (1966). Cases that call for the creation of federal common law are "few and restricted," see Atherton v. FDIC, 519 U.S. 213, 218 (1997), and it is difficult to prove the need for a federal common law rule, see Atchison, Topeka & Santa Fe Ry. Co. v. Brown & Bryant, Inc., 159 F.3d 358, 364 (9th Cir. 1998). The existence of a complex federal statutory scheme does not automatically show that Congress

32

intended courts to fill its gaps with rules of federal common law.  Id. at 362 (citing O'Melveny).  Rather, where federal statutory regulation is "comprehensive and detailed," as CERCLA is, we presume that matters left unaddressed are "left subject to the disposition provided by state law."  O'Melveny, 512 U.S. at 85.  We strongly presume that state law should be determinative where "private parties have entered legal relationships with the expectation that their rights and obligations would be governed by state-law standards," as is the case with most corporate matters.  Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 98 (1991).

While recognizing that Congress intended CERCLA to provide a sweeping remedy that requires responsible parties to bear the costs of cleaning up environmental contamination they cause, the Supreme Court has advised courts not to create CERCLA-specific rules to displace well-settled state corporate law just because a case involves CERCLA.  United States v. Bestfoods, 524 U.S. 51, 63 (1998).  In Bestfoods, the Court refused to adopt a "relaxed, CERCLA-specific rule of derivative liability that would banish traditional standards and expectations from the law of CERCLA liability."  Id. at 70.  This Circuit has thus interpreted Bestfoods as a clear warning against creating CERCLA-specific federal common law rules.  New York v. Nat'l Serv. Indus., Inc., 352 F.3d 682, 685 (2d Cir. 2003) (holding that Bestfoods required

33

us to overrule B.F. Goodrich v. Betkoski, 99 F.3d 505 (2d Cir. 1996), which had applied a federal common law rule of substantial continuity for purposes of determining corporate successor liability under CERCLA). The First Circuit likewise has interpreted Bestfoods as leaving "little room for the creation of a federal rule of [corporate] liability" under CERCLA. United States v. Davis, 261 F.3d 1, 54 (1st Cir. 2001). A split decision of the Third Circuit, in contrast, read Bestfoods to favor a uniform federal standard. United States v. Gen. Battery Corp., 423 F.3d 294, 300 (3d Cir. 2005), cert. denied, Exide Tech. v. United States, 127 S. Ct. 41 (2006).

While Bestfoods stops short of expressly instructing courts to apply state law, it clearly admonishes courts to refrain from creating CERCLA-specific rules in the face of applicable long-standing common law principles. Compare, Gen. Battery Corp., 423 F.3d at 305, with id. at 312 (Rendell, J., concurring and dissenting). As a practical matter, those principles typically come from state law. See Ronald H. Rosenberg, The Ultimate Independence of the Federal Courts: Defying the Supreme Court in the Exercise of Federal Common Law Powers, 36 Conn. L. Rev. 425, 455 (2004).

Having concluded that we cannot create a rule of federal common law on the basis of the mere involvement of CERCLA in the case, we proceed to the traditional analysis. As discussed in

Part III.A above, there is no significant conflict between state law and federal policy in this instance. The absence of such a conflict weighs heavily against creation of a rule of federal common law as a threshold matter, because a significant conflict is "normally a 'precondition'" to the creation of federal common law. Atherton, 519 U.S. at 218 (citing O'Melveny, 512 U.S. at 87).

In light of these principles, it is questionable whether we even need to entertain the additional considerations set forth in United States v. Kimbell Foods, Inc., 440 U.S. 715, 728-29 (1979), to analyze the State's invitation to apply the trust fund doctrine as a matter of federal common law, in place of the Delaware statutes, to permit it to recover CERCLA cleanup costs from Panex's shareholder-distributees. In Bestfoods, the Supreme Court flatly rejected the creation of federal common law without even citing the Kimbell Foods test. See Gen. Battery, 423 F.3d at 318 n.19 (Rendell, J., concurring and dissenting). Nonetheless, the parties have addressed the Kimbell Foods considerations, and we typically examine them in deciding whether to draw from state law or to create a rule of federal common law in cases involving federal programs. See Nat'l Serv. Indus., Inc., 460 F.3d at 207. Under Kimbell Foods, we consider: (1) the "need for a nationally uniform body of law"; (2) "whether application of state law would frustrate specific objectives of

35

the federal programs"; and (3) "the extent to which application of a federal rule would disrupt commercial relationships predicated on state law." 440 U.S. at 728-29.

First, the State argues that there is a strong need for a uniform body of federal law, because diverse state rules will frustrate CERCLA's goals of cleaning up environmental contamination and making sure that responsible parties, rather than taxpayers, bear the costs. "Although CERCLA is a federal statute for which there is presumably an interest in uniform application, where there is no conflict between federal policy and the application of state law, 'a mere federal interest in uniformity is insufficient to justify displacing state law in favor of a federal common law rule.'" Nat'l Serv. Indus., 460 F.3d at 208. "To invoke the concept of 'uniformity' . . . is not to prove its need." Atherton, 519 U.S. at 220. The need for uniformity is weak in this case. No state provides a safe "haven" for polluters. Atchison, 159 F.3d at 364. The State expresses concern that states' different corporate wind-up periods could prove troublesome, but the fifty states' laws on corporate dissolution are "largely uniform" already. Anspec, 922 F.2d at 1249 (Kennedy, J., concurring). Cf. Gen. Battery, 423 F.3d at 303. Moreover, variations in rules among states do not prove a need for uniformity "as long as the applicable standard is applied evenhandedly to particular disputes." Wilson v. Omaha

Indian Tribe, 442 U.S. 653, 673 (1979) (internal punctuation omitted).

Next, we inquire whether application of state law will frustrate federal objectives. Our preemption analysis in Part III.A faced the same question and concluded that Delaware law does not significantly frustrate the objectives manifested in CERCLA. We acknowledge that "corporate law's preference for limited corporate liability is theoretically at odds with CERCLA's broad remedial goals." Mank, supra, 68 U. Cin. L. Rev. at 1160. Nonetheless, CERCLA recognizes that recovery will not always be possible and does not mandate recovery from every person with any connection to a contaminated site. See Commander Oil Corp., 215 F.3d at 327. That the fund would win under the State's proposed standard is not sufficient to justify adopting a rule of federal common law to expand the standard of liability for shareholder-distributees of a dissolved corporation whose predecessor owned a company that was responsible for environmental contamination. See O'Melveny, 512 U.S. at 88; see also Mank, supra, 68 U. Cin. L. Rev. at 1159 (stating that in O'Melveny the Supreme Court "rejected the view that the government is entitled to an expansive federal common law standard just because the government would win more often").

Finally, we inquire whether adoption of the rule the State proposes as a matter of federal common law would disrupt

37

commercial relationships predicated on state law. <u>Kimbell Foods</u>, 440 U.S. at 729. We easily conclude that it would. The presumption that state law should be determinative "is particularly strong in areas in which private parties have entered legal relationships with the expectation that their rights and obligations would be governed by state-law standards." <u>Kamen</u>, 500 U.S. at 98; <u>see also</u> <u>Kimbell Foods</u>, 440 U.S. at 729. Shareholders have the expectation of limited liability under state law when they invest in corporations. Delaware General Corporation Law §§ 278 and 325(b) protect shareholders from buying into a perpetual threat of liability by providing that, after a period of time after their corporation dissolves, they no longer face liability on claims against the dissolved corporation and are free to conduct their financial affairs. The alternative would be unworkable. Dissolved corporations might delay distributions indefinitely, diminishing shareholders' incentive to invest. If distributions were made, shareholder-distributees would have to hold onto them, just in case an unknown claim arises at some point in the future, or else come up with funds to replace any received distributions that have been expended once the claim and demand for disgorgement arise. <u>See</u> <u>City of Philadelphia v. Stepan Chem. Co.</u>, 713 F. Supp. 1491, 1494 (E.D. Pa. 1989); <u>In re Citadel Indus., Inc.</u>, 423 A.2d at 506. Hanging a cloud of perpetual uncertainty over the former shareholders of

38

dissolved business entities in the name of CERCLA would impair the finality that allows parties to proceed with confidence into new transactions. "Major economic decisions, critical to society, are best made in a climate of relative certainty and reasonable predictability." Polius v. Clark Equip. Co., 802 F.2d 75, 83 (3d Cir. 1986) ("Unforeseeable alterations in successor liability principles complicate transfers and necessarily increase transaction costs."); Perry E. Wallace, Jr., Liability of Corporations and Corporate Officers, Directors, and Shareholders under Superfund: Should Corporate and Agency Law Concepts Apply?, 14 J. Corp. L. 839, 842 (1989) (An unchecked interpretation of CERCLA liability engenders "uncertainties and fears" that "unnecessarily diminish the affected industries' contributions to certain basic economic and business functions in society.").

The absence of a significant conflict between Delaware law and CERCLA's goals directs our conclusion that we must not create a federal common law version of the trust fund doctrine in this case, a conclusion that is reinforced by the weak need for uniformity and the strong need to protect existing commercial relationships based on state law. We affirm the district court's holding that Delaware General Corporation Law §§ 278 and 325(b) must govern the shareholder-distributees' amenability to the State's CERCLA claims, and, accordingly, we hold that those

39

claims were properly dismissed.

IV.

Finally, we consider the implications of our holding for the cross-appeal of the shareholder-distributees, acting as Panex trustees, of the district court's entry of summary judgment against Panex on the State's CERCLA claims. In refusing to dismiss those claims, the district court concluded that CERCLA preempted Delaware's limits on Panex's capacity to be sued. As discussed in Part III.A, we reject that finding of preemption and reverse the judgment of the district court on the CERCLA claims against Panex.

The shareholder-distributees had suggested that we need not reach their cross-appeal if we were to uphold the dismissal of the State's trust fund doctrine claims against them, because as a practical matter this holding absolves them of liability whether or not the State has a viable claim against the defunct and penniless Panex. Nonetheless, the district court's conclusion that CERCLA preempts Delaware General Corporation Law § 278 for purposes of the CERCLA claims against Panex is not without consequence. As a matter of principle, displacement of state law is not favored under recent Supreme Court precedent, and, as a matter of practicality, refusal to apply state law in this instance would have unsettling implications for commercial relationships as discussed above. The claims against both the

40

shareholder-distributees and Panex should be dismissed as both lack capacity to be sued under Delaware law.

## V.

We affirm the portion of the district court's order dismissing the State's claims against the shareholder-distributees. We reverse the denial of the motion to dismiss the State's CERCLA claims against Panex, as well as the summary judgment granted against Panex on those claims.